# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2005 OCT 21  AM 9: 29

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
KIMBERLY MAJORS,              *
                             *
         Plaintiff,          *
                             *
    v.                       *          CV 104-047
                             *
MORGAN TIRE & AUTO, INC.     *
d/b/a TIRES PLUS TOTAL       *
CAR CARE,                    *
                             *
         Defendant.          *
```

## O R D E R

Plaintiff Kimberly Majors ("Majors") filed the captioned case alleging that her former employer, Defendant Morgan Tire & Auto d/b/a Tires Plus Total Car Care ("Morgan Tire"), violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), by failing to promote her on two occasions to the position of Store Manager (Am. Compl. ¶¶ 36 & 54), subjecting her to sexual harassment by her supervisors (id. ¶ 89), retaliating against her for the reports she made about the alleged sexual harassment and the failure to promote (id. ¶ 96), and "requiring Plaintiff to work under differing conditions and receiving less benefits and compensation as compared to her similarly situated male counterparts" (id. ¶

DHB (39)                                          CCC: _____

104).   Plaintiff also claims that Defendant violated the
Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, by
interfering with her medical leave and retaliating against her
by threatening to fire her for taking leave.   (Am. Compl. ¶¶
64, 68.)   Finally, Plaintiff claims that Defendant negligently
allowed the alleged sexual harassment to occur. (Id. ¶ 101.)
Presently before the Court is Defendant's motion for summary
judgment on all of these claims.   (Doc. No. 24.)   For reasons
stated more fully below, Defendant's motion is **GRANTED IN PART**
and **DENIED IN PART**.


## I.  Background

Morgan Tire sells tires and services automobiles at
various retail stores that it operates in Augusta, Georgia and
elsewhere in the United States.  (Def.'s Mem. in Supp. of Mot.
for Summ. J. at 2.)   In June 1999, Morgan Tire hired Plaintiff
to work as a sales representative at its Tobacco Road store in
Augusta-Richmond County, Georgia. (K. Majors Dep. at 19.)   At
the time of her hiring, Plaintiff received an Employee
Handbook and signed an acknowledgment form verifying its
receipt. (Id. at 24.)   Defendant's Employee Handbook contains
policies prohibiting sexual harassment and a procedure whereby
employees may seek help for sexual harassment.  (Id. at 142;
Messmer Dep. at 126.)   Defendant's Employee Handbook also

2

contains a policy explaining its FMLA Program and advising employees how to seek FMLA leave. (K. Majors Dep. at 143; Messmer Dep. at 127.)

In January 2001, Plaintiff was transferred to work as a sales associate at Defendant's Washington Road store. From that time until March 1, 2001, Plaintiff alleges that she was sexually harassed by Store Manager Brendan Ames ("Ames"). (K. Majors Dep. at 56.) According to Plaintiff, Ames propositioned her for sex, frequently told her about the size of his penis, periodically compared the size of his penis to her husband's penis, unzipped his pants in front of her on a weekly basis, grabbed his genital area in front of her on a daily basis, grabbed her buttocks on a weekly basis, frequently told jokes of a sexual nature, told her about his sex life, left messages on her answering machine which professed his love for her, and would yell and throw office equipment at her when she tried to ignore his harassment. (Id. 33-36, 40.)

Plaintiff first reported this harassment to Defendant when she notified Regional Manager Carl Messmer ("Messmer") a week or two prior to March 11, 2001 about Ames's conduct. (Id. at 29.) After listening to Plaintiff's complaints about Ames's harassment, Messmer allegedly remarked that either Ames's conduct or Plaintiff's complaint was proof of why he

3

did not "like women working for the company." (<u>Id.</u> at 98.)
Messmer then told Plaintiff to "grow a backbone" and advised
her to respond to Ames's future harassment by telling him to
kiss her "ass" and to leave her alone.[1] (Majors Dep. at 42.)

A week or two later, Plaintiff approached Ames with a
question about her work.  Ames responded to Plaintiff's
question by slapping her buttocks and telling her that he
would talk to her at a later time.  (<u>Id.</u> at 44.)  Plaintiff
then told Ames to leave her alone and that she had been
instructed to tell Ames to kiss her "ass." (<u>Id.</u>)  As Plaintiff
turned around to walk away, Ames grabbed her hips and kissed
her buttocks.  (<u>Id.</u>)  Ames and the other male employees then
laughed at Plaintiff as she walked to the bathroom where she
cried in humiliation. (<u>Id.</u> at 45.)

The next day Plaintiff went to Messmer's office to
complain about Ames's conduct.[2]  (<u>Id.</u> at 47.)  In response to
her complaint, Messmer informed Plaintiff that there was going
to be an investigation and that she would no longer have to
work with Ames.  (<u>Id.</u> at 49.)  Within a day or two, a man from
Defendant's corporate headquarters interviewed Plaintiff about
the incident.  On March 11, 2001, Ames was transferred to the

---

[1] Messmer does not deny he told Plaintiff to "grow a backbone," but
he denies that he told Plaintiff to tell Ames to "kiss her ass." (Messmer
Dep. at 134.)

[2] Plaintiff believes that she also called Defendant's Human Resources
department the afternoon of the incident. (<u>Id.</u> at 53.)

Peach Orchard Road store and demoted.[3]  Even after Ames was transferred, however, Plaintiff's co-workers at the Washington Road store continued to harass her by calling her Ames's girlfriend.

In January 2002, Plaintiff was transferred to the Peach Orchard Road store where she worked under Store Manager Garrett Coulter ("Coulter") until March 2002.  In February 2002, Plaintiff suddenly became ill while at work and had to be hospitalized.  (Majors Dep. at 102.)  She remained in the hospital for approximately four to five days.  (Id. at 103.) While Plaintiff was in the hospital, Coulter allegedly called her and asked her when she would return to work.  Plaintiff told Coulter that she needed some time off.  Coulter responded to her request for medical leave by hanging up the phone.  (Id. at 107.)  Coulter later called and threatened to terminate Plaintiff unless she returned to work.  (Id. at 103, 107.)

Against the advice of her husband and her physician, Plaintiff checked herself out of the hospital and returned to work.[4]  (Id. at 103, 104.)  After being at work for no more than four hours, Plaintiff got sick again and her husband

---

[3]  Plaintiff claims that this punishment was temporary because Ames was promoted back to the position of store manager in September 2001 and later transferred back to the Washington Road store.

.  [4] The exact dates of Plaintiff's hospitalization are not clear from the record, but it appears that she was discharged on March 1, 2002. (Majors Dep. at 106.)

5

picked her up and took her to a different hospital. (Majors Dep. at 105.)  Again, Coulter called to complain that he could not run the business without her, asked her how to do certain tasks, and wanted to know whether she was coming back to work. Coulter allegedly threatened that he would replace Plaintiff unless she returned to work. (Id. at 106).

In addition to her claims regarding Coulter's handling of her hospitalizations, Plaintiff claims that Coulter sexually harassed her for a period of approximately three months. (Id. at 56-57, 59.)  According to Plaintiff, Coulter left Plaintiff a series of seven to ten notes which described the size of his genitals and indicated his desire to have anal and oral sex with Plaintiff's husband.[5] (Id. at 58.)  On one occasion, Coulter "humped" Plaintiff while delivering one of these notes to her and then asked her if she was going to do the same thing to him that she did to Ames.[6] (Id. at 58, 96, & 164.)

When Plaintiff complained about Coulter's conduct to Joe Roman, Coulter's supervisor, Roman suggested that Plaintiff ask Coulter if she could also participate in the sex acts that Coulter was seeking to perform on Plaintiff's husband. (Majors

---

[5] According to Plaintiff, Coulter is married and not homosexual. (Id. at 58, 96.)

[6] During this time period, Ames continued to have contact with Plaintiff when he called or visited the Peach Orchard Road location to pick up tires. (Id. at 49.)  During those encounters, Ames would ask Plaintiff if she was proud of what she had done to him or merely laugh at her. (Id. at 50-51.)

Dep. at 60-61, 95.)  In addition to notifying Roman, Plaintiff also called and left several telephone messages with Messmer about Coulter's conduct but she never heard back from Messmer. (Id. at 61.)  Plaintiff did not attempt, however, to contact anyone at Defendant's corporate headquarters regarding Coulter's sexual harassment.

In April 2002, Messmer transferred Plaintiff to the Robert C. Daniels Parkway store which was managed by Roman. Messmer claims that he transferred Plaintiff because she was having "performance issues" and that she could get additional training at the new store.  (Messmer Dep. at 100-01.)  As part of the transfer, Messmer also demoted Plaintiff from her prior position as service manager down to a sales associate position.  (Id. at 62-63.)  The demotion to the sales position cut Plaintiff's pay from $675 per week to $12 per hour. Messmer claims that he demoted Plaintiff because of Coulter's reports about her absences and "performance problems." (Id. 69, 72.)

After the transfer, Plaintiff worked at the Robert C. Daniels Parkway location for approximately three weeks. On April 26, 2002, Plaintiff verbally advised Defendant that she was resigning.  Two days later, Plaintiff submitted a "Letter of Resignation" to Defendant. (Majors Dep., Ex. 5.)  In this letter, Plaintiff explained that "excruciating" work

conditions and sexual harassment caused her to resign. (Id.)

On May 13, 2002, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Augusta-Richmond County Human Relations Commission. Plaintiff received a Notice of Right to Sue on March 5, 2004 which contained the EEOC's finding of "reasonable cause to believe that violations of the statute(s) occurred." (Am. Compl., Ex. A.) Plaintiff then filed this lawsuit on March 19, 2004.

## II. Requirements for Summary Judgment

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor," United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the

Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, . . . no reasonable jury could find for the non-moving party." Four Parcels, 941 F.2d at 1438. On the other hand, if the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways--by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

9

If--and only if--the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. Again, how to carry this burden depends on who bears the burden of proof at trial. If the movant has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. Anderson, 477 U.S. at 249. If the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

10

Rather, the non-movant must respond by affidavits or as otherwise provided by Fed. R. Civ. P. 56.

The Clerk has given the non-moving party notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 25.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. Analysis

### A. Plaintiff's Title VII Claims

Plaintiff claims that Defendant violated Title VII by failing to promote her on two occasions to the position of Store Manager, subjecting her to sexual harassment by her supervisors, retaliating against her for the reports she made about the alleged sexual harassment and the failure to promote, and subjecting her to different work conditions than her male counterparts. While Defendant's arguments regarding each of these claims are discussed below, Defendant's timeliness argument should be considered first because it affects all of Plaintiff's Title VII claims.

11

### 1. Timeliness of Plaintiff's Title VII Claims

Under Section 706(e)(1) of Title VII, 42 U.S.C. § 2000(e)-5(e)(1), a plaintiff must file a charge of discrimination within 180 days of the alleged unlawful employment practice. This limitations period is extended to 300 days if the plaintiff "has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto." Id. A state or local agency with the authority to grant or seek relief from discriminatory practices is often called a deferral agency, also known as a "Fair Employment Practice Agency" or "FEP Agency." See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 439 (4th Cir. 1998)(citing 29 C.F.R. § 1601.70). Likewise, a state that prohibits employment discrimination and that has established state or local authorities to grant or seek relief for such discrimination is commonly referred to as a "deferral state." Maynard v. Pneumatic Prods. Corp., 256 F.3d 1259, 1262-63 (11th Cir. 2001).

While it does not appear to be to its advantage, Defendant has taken the position that Plaintiff's Title VII claims are governed by the 300 day limitations period because Plaintiff "dual-filed" her charge with the EEOC and the

12

Augusta-Richmond County Human Relations Commission ("AHRC").[7] In taking this position, Defendant does not address, however, the Eleventh Circuit's recent statements that plaintiffs in Georgia have only 180 days to file a charge of discrimination because it is a non-deferral state. See Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003); Wilkerson v. Grinnell Corp., 270 F.3d 1314 (11th Cir. 2001).[8] Notwithstanding Defendant's failure to address these cases, it appears that Defendant is correct that a 300 day limitations period applies in this particular case.

While Georgia is generally not considered a deferral state because it does not have a state law analogous to Title VII nor a state agency empowered to enforce such a law, Georgia does have two deferral agencies: the Georgia Office of

---

[7] "Dual-filing is the process by which a charge of discrimination filed with one agency is deemed filed with the other agency." Thompson v. Orange Lake Country Club, Inc., 224 F.Supp.2d 1368, 1374 (M.D. Fla. 2002). "Certain worksharing agreements between a state agency and EEOC provide for 'dualfiling.'" Id. (citing 42 U.S.C. § 2000e-8(b)). The AHRC has a "workshare" agreement with the EEOC whereby it has authority to receive charges on behalf of the EEOC and a charge filed with the AHRC is deemed to be simultaneously filed with the EEOC. See Scruggs v. Univ. Health Serv., 134 F.Supp.2d 1375, 1376 (S.D.Ga. 2001), rev'd on other grounds, 281 F.3d 1285 (11th Cir. 2001).

[8] Other courts have also stated that Georgia is a non-deferral state. See Howlett v. Holiday Inns, Inc., 49 F.3d 189, 197 (6th Cir. 1995); Wallace v. Georgia Dep't of Transp., 2005 WL 2031111 (M.D. Ga. Aug. 23, 2005); Taylor v. Rodale, Inc., 2004 WL 3199363 (E.D. Pa. Oct. 22, 2004); Elliot v. Firearms Training Systems, Inc., 2004 WL 2567619 (W.D. Tex. Oct. 21, 2004); Taylor v. Coca-Cola Co., 2001 WL 204725 (La. Feb. 28, 2001); Gripper v. AT&T, 1997 WL 282214 (S.D.N.Y. May 28, 1997); Shores v. Publix Super Markets, Inc., 1996 WL 407850 (M.D. Fla. March 12, 1996).

Fair Employment Practices and the AHRC.[9]  See 29 C.F.R. §
1601.74.  The AHRC has been designated a deferral agency
because it meets the requirements found in 42 U.S.C. §
2000(e)-5(c) and 29 C.F.R. § 1601.70 that Augusta-Richmond
County have an employment discrimination law and an agency
with the authority to remedy violations of that law.  See
Augusta-Richmond County, Georgia Code §§ 1-4-124, 1-4-127.
Because Plaintiff "dual-filed" her charge of discrimination
with the AHRC and the EEOC, the Court may consider the alleged
unlawful employment practices that occurred within 300 days of
Plaintiff's filing date of May 13, 2002.[10]

### 2.  Failure to Promote Claims

#### a.  Washington Road Store Manager

Turning to Plaintiff's specific Title VII claims,
Plaintiff alleges in Count I of her complaint that she was
unlawfully denied a promotion to the position of Store Manager
at Defendant's Washington Road store.  Instead of Plaintiff,
Defendant promoted a man named Finley Cunningham on or about

---

[9] This regulation listing deferral agencies notes that "the Georgia
Office of Fair Employment Practices has been designated as a FEP agency
for all charges covering the employment practices of the departments of
the State of Georgia only." 29 C.F.R. § 1601.74 n.6.  Furthermore, while
this regulation lists the AHRC as the "Richmond County (GA) Human Rights
Commission," it is clear that they are the same entity.

[10] As the following discussion demonstrates, the disposition of
Defendant's motion would not change even if the 180 day limitations period
applied.

June 18, 2000 to that position. (Def.'s Resp. to Pl.'s First Set of Interrog. ¶ 4.)   Plaintiff filed her EEOC charge approximately 694 days after this alleged failure to promote. This failure to promote Plaintiff in 2000 cannot be tied together with Defendant's failure to promote her in 2002 because they are "discrete discriminatory acts [which] are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[11] Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Moreover, Plaintiff does not address this failure to promote claim in her opposition to Defendant's motion for summary judgment.  It appears that Plaintiff has wisely chosen to abandon this claim because it is clearly time-barred.

### b.  Peach Orchard Road Store Manager

In Count II of her complaint, Plaintiff alleges that she was unlawfully denied a promotion to the position of Store Manager at Defendant's Peach Orchard Road store in January 2002 when Defendant promoted Coulter, instead of Plaintiff, to that position.  As Plaintiff timely filed her EEOC charge within 300 days of this alleged failure to promote, she may establish this claim by presenting direct evidence of

---

[11] "Discrete acts such as termination, <u>failure to promote</u>, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" <u>Morgan</u>, 536 U.S. at 114 (emphasis added).

15

discrimination or by relying on circumstantial evidence. Wright v. Southland Corp., 187 F.3d 1287, 1293 (11th Cir. 1999). If Plaintiff presents direct evidence of discrimination, she does not need to establish that Defendant's proferred non-discriminatory business reason for not promoting her was pretextual. See Akouri v. Fla. Dep't of Transp., 408 F.3d 1338, 1348 (11th Cir. 2005).

Direct evidence of discrimination is "evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (citation and emphasis omitted). To constitute direct evidence of discrimination, a statement of discriminatory intent "must be made by a person involved in the challenged decision." Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1105 (11th Cir. 2001). In gender discrimination cases, the Eleventh Circuit has held all of the following statements to be direct evidence: "a woman was not competent enough to do this job," Haynes v. W.C. Caye & Co., 52 F.3d 928, 930 (11th Cir. 1995); "no woman would be named to a B scheduled job," Burns v. Gadsden State Cmty. Coll., 908 F.2d 1512, 1518 (11th Cir. 1990); "we can't have women in management," Sennello v. Reserve Life Ins. Co., 872 F.2d 393, 394-95 (11th Cir. 1989).

In the present case, Raymond Majors, Plaintiff's brother-

16

in-law and an employee of Defendant, has testified that Messmer told him sometime before January 2002 that women did not have a place in Defendant's business and that he would not have women working for Defendant. (R. Majors Decl. ¶ 8.)  In addition to this statement, Plaintiff also points to Messmer's statement to her in March 2001 that he did not "like women working for the company." (K. Majors Dep. at 98.)

Defendant's argument that these statements are inadmissable hearsay fails because Messmer's statements fall within the hearsay exclusion for statements made "by [a] party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," which are deemed admissions by a party opponent.   Fed. R. Evid. 801(d)(2)(D); see also Miles v. M.N.C. Corp., 750 F.2d 867, 873-75 (11th Cir. 1985)(holding that discriminatory statements made by a supervisor who has a role in the decision-making process are generally admissible). Plaintiff's proffered evidence of Messmer's statements is sufficient to establish direct evidence of discrimination and withstand Defendant's motion for summary judgment on this claim.[12]

---

[12] The EEOC's finding that there was reasonable cause to believe that discrimination occurred bolsters this conclusion.  See Horne v. Turner Constr. Co., 136 Fed. Appx. 289, 292 (11th Cir. 2005)(holding that the district court erred when it did not take into its consideration the EEOC's finding of reasonable cause during summary judgment proceedings).

### 3.   Sexual Harassment Claim

#### a.   Timeliness

In addition to her failure to promote claim, Plaintiff claims that she was subjected to a hostile work environment because of her supervisors' sexual harassment.   As a preliminary matter, Defendant argues that the Court cannot find it liable for Ames's conduct during the spring of 2001 because that part of Plaintiff's claim is time-barred. Plaintiff may only obtain relief for acts of sexual harassment that took place before July 17, 2001 if these alleged Title VII violations were a part of a hostile work environment which existed, at least in part, after that date.   See Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003). Plaintiff, however, cannot recover for sexual harassment that occurred before July 17, 2001, "if such acts are no longer part of the same hostile work environment claim because of 'certain intervening action by the employer.'" Id.

Defendant argues that Ames's demotion and transfer on March 11, 2001 qualifies as an intervening act which shelters it from liability for Ames's conduct.   In Watson, the Eleventh Circuit concluded that the defendant's disciplinary actions which effectively prevented the harasser from causing his victim any more problems were sufficient to shield the harassment from the court's consideration.   In the present

case, however, Defendant's demotion and transfer of Ames does not qualify it for protection from Plaintiff's hostile work environment claim because Plaintiff's co-workers at the Washington Road store continued to harass her after Ames left by calling her Ames's girlfriend. Furthermore, Ames continued to cause Plaintiff problems after March 11, 2001 when he would call or visit her at work. <u>See</u> footnote 6 <u>supra</u>. Accordingly, Ames's conduct at the Washington Road store should be considered as part of Plaintiff's hostile work environment claim.

To prove a hostile work environment, Plaintiff must show "(1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment . . . (3) that the harassment [was] based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). Defendant contends that Plaintiff cannot establish the fourth element as a matter of law. Defendant also contends that it is entitled to the <u>Faragher-Ellerth</u> defense in any event.

19

### b. "Severe and pervasive" element

The element that "tests the mettle" of a sexual harassment claim is the "sufficiently severe or pervasive" element. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000). Sexual harassment is actionable under Title VII only if it is "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001) (quotes and citation omitted); Mendoza, 195 F.3d at 1245. This requires a showing of conduct that: (1) is objectively severe or pervasive; and (2) the employee subjectively perceives as hostile or abusive. Breda v. Wolf Camera, Inc., 148 F. Supp. 2d 1371, 1374 (S.D. Ga. 2001). There is no dispute in the instant case that Plaintiff perceived her supervisors' conduct as hostile and abusive.

To determine whether the alleged harassment is "objectively severe or pervasive," courts consider the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance. Mendoza, 195 F.3d at 1246. That means that "courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is

20

sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." Id.

In analyzing the objective component of the severe and pervasive element, a court must ask whether "a reasonable person in plaintiff's position [would] find the harassment severe and pervasive." Breda, 148 F. Supp. 2d at 1374 (quoted source omitted). In some cases, determining whether the "parade of horribles" listed by a plaintiff is sufficient to survive summary judgment is not an easy task. See Breda, 148 F. Supp. 2d at 1376-78 (Edenfield, J.) (detailing the complexity of answering the question of what is sufficiently severe sexual harassment). In the instant case, however, the determination is simpler. Plaintiff has presented evidence that shows frequent humiliating harassment of such magnitude that it altered her work environment. E.E.O.C. v. R & R Ventures, 244 F.3d 334, 341 (4th Cir. 2001) ("[T]he inquiry is not whether work has been impaired, but whether working conditions have been discriminatorily altered."); Mendoza, 195 F.3d at 1245-46.


c.   **Faragher-Ellerth** defense

Even though Plaintiff has established a prima facie case of sexual harassment, under Burlington Industries, Inc. v.

_Ellerth_, 524 U.S. 742 (1998), an employer will not be vicariously liable for alleged supervisor sexual harassment if:

> (a) [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and

> (b) [the] plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

_Id._ at 765. This defense, however, is not available "when the supervisor's harassment culminates in tangible employment action." _Id._; _Faragher v. City of Boca Raton_, 524 U.S. 775, 807 (1998). "[A] tangible employment action constitutes a significant change in employment status such as hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." _Ellerth_, 524 U.S. at 761.

The first prong of the _Faragher-Ellerth_ defense is met if an employer promulgates a policy that is "comprehensive, well-known to employees, vigorously enforced, and provides alternate avenues of redress." _Farley v. Am. Cast Iron Pipe Co._, 115 F.3d 1548, 1554 (11th Cir. 1997). A policy must not be administered "in bad faith" or be "otherwise defective or dysfunctional." _Madray v. Publix Supermarkets, Inc._, 208 F.3d 1290, 1299 (11th Cir. 2000).

Here Defendant had in place a policy to deal with

22

workplace harassment as set forth in its Employee Handbook. The policy made clear that no form of sexual harassment would be tolerated. The policy provides the following avenues for reporting harassment:

> Associates who believe they have been subjected to sexual harassment or who believe that such behavior has occurred should inform the perpetrator (preferably at the time of the unwelcome advance) of the specific behavior that is unwelcome, and request the perpetrator to stop. If you are not comfortable with this approach, or if the problem continues, contact that person's immediate Supervisor for assistance. If the problem is caused by a person with supervisory authority, or if previous attempts have not solved the problem, you may go directly to a Divisional President of the Chief Executive Officer at any time regarding matters of sexual harassment or questions about the policy.

> The company will investigate all complaints and will endeavor to handle these matters expeditiously, confidentially, and in a professional manner so as to protect the offended individual. When the situation is fully understood by management, prompt and appropriate action will be taken. . . . If you believe that you have been the victim of harassment, report it immediately to your Supervisor, Department Head, the Divisional President, or the Chief Executive Officer of the Company.

(Majors Dep., Ex. 7.)

Defendant has not met the first prong of the <u>Faragher-Ellerth</u> defense because Plaintiff has adequately alleged that Defendant's policy was dysfunctional. If Plaintiff is correct that Messmer responded to her first complaint about Ames's conduct by telling her to "grow a backbone" and advising

Plaintiff to respond to future harassment by telling Ames to kiss her "ass," then Defendant's policy of handling complaints in a "professional manner" was administered in bad faith in the context of Ames's harassment.   Similarly, Roman's alleged instruction to Plaintiff that she participate in Coulter's sexual advances further demonstrates that Defendant's policy was defective.   Thus, Defendant cannot meet the first prong of the Faragher-Ellerth defense.

Under the second prong of the Faragher-Ellerth defense, Defendant must also show by a preponderance of the evidence that Plaintiff unreasonably failed to take advantage of its policy.   This Court has explained that "reading Ellerth and Faragher in concert with existing Eleventh Circuit caselaw, the new keystone to a sexual harassment claim is notice.   The notice must be sufficient to afford an employer with a reasonable opportunity to remedy the problem."   Jones v. USA Petroleum Corp., 20 F. Supp. 2d 1379, 1385 (S.D. Ga. 1998) (Edenfield, J.).   As set forth above, Plaintiff alleges that she pursued the various avenues that Defendant's policy contains for reporting harassment.   In the context of Ames's conduct, she complained about the harassment to Ames, Messmer, and the Human Resources department.   Similarly, Plaintiff complained about Coulter's conduct to Roman and Messmer. Thus, Defendant fails to satisfy the second prong of the

24

<u>Faragher-Ellerth</u> defense.

Furthermore, Defendant cannot avail itself of the <u>Faragher-Ellerth</u> defense for Coulter's harassment because his actions culminated in Plaintiff's transfer and demotion from the store which Coulter supervised.  As noted above, Messmer based his decision to transfer and demote Plaintiff solely on Coulter's unfavorable reports about Plaintiff.  Especially in light of Coulter's alleged remark about Ames's punishment for harassing Plaintiff, a jury could reasonably find that Messmer became a "cat's paw" to culminate the harassment of Plaintiff in a tangible employment action.  <u>See</u> <u>Llampallas v. Mini-Circuits, Lab. Inc.</u>, 163 F.3d 1236, 1249 (11th Cir. 1998).

### 3.   Retaliation Claim

Plaintiff claims that her transfer and demotion in April 2002 was in retaliation for Plaintiff's complaints about her supervisors' sexual harassment and Defendant's failure to promote her.  A retaliation claim under Title VII requires Plaintiff to prove that "(1) she participated in an activity protected by Title VII;[13]  (2) she suffered an adverse employment action; and (3) there is a causal connection between the [the first two elements]."  <u>Gupta</u>, 212 F.3d at

---

[13] "Statutorily protected expression includes internal complaints of sexual harassment to superiors as well as complaints lodged with the EEOC." <u>Pipkins v. City of Temple Terrace, Fla.</u>, 267 F.3d 1197, 1201 (11th Cir. 2001).

587.   If "a plaintiff makes out a prima facie case of retaliation, the burden shifts to the defendant" to produce "legitimate reasons for the adverse employment action." Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002) (citation omitted) (internal quotation marks omitted).   If the defendant does so, the plaintiff must then demonstrate that the employer's explanation is a pretext for retaliation.   Id.

While Defendant apparently concedes that Plaintiff has made out a prima facie case of retaliation,[14] Defendant argues that Plaintiff has no evidence that Defendant's explanation for Plaintiff's transfer and demotion is pretextual. Defendant's stated reasons for Plaintiff's demotion and transfer is that the Robert C. Daniels Parkway store could better accommodate her absences and give her more opportunities for earning bonuses.   Plaintiff responds by arguing that Messmer's sexist statements provide direct evidence of pretext.   Furthermore, Plaintiff argues that Defendant's explanation for her demotion and transfer is pretextual because it contradicts the position statement given to the AHRC by Defendant.   Plaintiff has provided sufficient evidence through which a reasonable jury could conclude that

---

[14] Defendant's concession is warranted because the temporal proximity between Plaintiff's complaints about Coulter's harassment provides the causal connection between her complaints and the transfer and demotion. See Maniccia v. Brown, 171 F.3d 1364, 1369-70 (11th Cir. 1999).

Defendant's proffered explanation was a pretext for retaliation. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's retaliation claim.

### 3.   Disparate Working Conditions Claim

Plaintiff's last Title VII claim is that Defendant required her to "work under differing conditions and receiving less benefits and compensation as compared to her similarly situated male counterparts." (Am. Compl. ¶ 104.) Specifically, Plaintiff claims that she was required to perform the duties of a store manager without being paid as much as male store managers. In its motion for summary judgment, Defendant flatly states that Plaintiff may not recover on this claim to the extent that it rehashes Plaintiff's failure to promote claim. In a similarly conclusory fashion, Defendant also states that Plaintiff has provided no evidence of differing working conditions based on sex.

Defendant has failed to carry its "initial burden of showing the Court, by reference to materials on file, the basis" for its motion on this claim. Celotex Corp., 477 U.S. at 323. A mere conclusory statement that the non-movant has produced no information to prove a fact necessary to the her case is insufficient to carry Defendant's burden. See Clark,

27

929 F.2d at 606-08.  Accordingly, Defendant's motion for summary judgment on this claim fails because it did not succeed in shifting the burden to Plaintiff to demonstrate a material issue of fact.

## B.  Family and Medical Leave Act Claims

Turning to Plaintiff's FMLA claims, Plaintiff alleges that Defendant interfered with her medical leave in February and March 2002 and also retaliated against her by threatening to fire her for taking leave.[15]  Defendant seeks summary judgment on Plaintiff's FMLA claims because she filed her complaint on March 19, 2004 after the two-year statute of limitations had run.   In most cases, the statute of limitations for an FMLA claim is "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). Where a plaintiff can show a willful violation, however, the limitation period is extended to three years. 29 U.S.C. § 2617(c)(2).  It is undisputed that if Defendant's conduct was not willful, Plaintiff's FMLA claims are time-barred.

---

[15] The FMLA provides eligible employees up to 12 weeks of unpaid leave during any 12-month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1).  An employee must provide notice to an employer that the employee plans to take FMLA leave. 29 U.S.C. § 2612(e)(2).  The FMLA prohibits employers from discriminating against employees for asserting rights under the Act, and this prohibition includes consideration of an employee's use of FMLA leave as a negative factor in any employment action. 29 U.S.C. § 2615(a)(2).

The term "willful" is not specifically defined in the FMLA, and it appears that neither the United States Supreme Court nor the Eleventh Circuit has defined it with respect to the FMLA. In McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988), the Supreme Court reviewed a claim under the Fair Labor Standards Act ("FLSA") and held that an employer acts willfully when it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." The Supreme Court further stated that "[i]f an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful. . . . If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then . . . it should not . . . be considered [willful]." Id. at 135 n.13. In Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 33-34 (1st Cir. 2003), the First Circuit reasoned that it should apply the FLSA standard for willfulness set forth in McLaughlin to FMLA claims because the FMLA and FLSA use the term "willful" in similar ways and in identical contexts.[16] The Court agrees with the parties and the First Circuit that the willfulness standard set forth in

---

[16] The Second, Fourth, Fifth, Sixth, Eighth, and Tenth Circuits also apply the McLaughlin willfulness standard to FMLA claims. See Porter v. New York Univ. Sch. of Law, 392 F.3d 530, 531-32 (2d Cir. 2004); Settle v. S.W. Rodgers Co., 1999 WL 486643 at *3 (4th Cir. 1999); Henson v. Bell Helicopter Textron, Inc., 128 Fed. Appx. 387, 392-93 (5th Cir. 2005); Hoffman v. Prof'l Med Team, 394 F.3d 414, 416 (6th Cir. 2005); Hanger v. Lake County, 390 F.3d 579, 583-84 (8th Cir. 2004); Packard v. Cont'l Airlines, Inc., 24 Fed. Appx. 960, 961 (10th Cir. 2001).

<u>McLaughlin</u> for FLSA claims should be applied to FMLA claims.

Applying this standard to the instant case, it appears that Coulter was aware that Plaintiff was suffering from a serious medical condition that justified FMLA leave because he was present when she suddenly became sick and her husband picked her up to take her to the hospital.  Furthermore, Coulter stated he was familiar with FMLA and knew that he should call Messmer if he needed help in handling Plaintiff's medical leave. (Coulter Aff. ¶¶ 9, 10.)  Instead of attempting to determine his legal obligations under the FLMA, Coulter allegedly threatened to terminate Plaintiff if she failed to return to work.  These disputed facts, if true, show that Defendant alleged violations of the FLMA were willful. Accordingly, Defendant is not entitled to summary judgment on these claims.[17]

---

[17] Defendant's argument that its conduct cannot be willful because Plaintiff made no request for FMLA leave is misplaced.  "The Code of Federal Regulations makes clear that an employee taking unforeseeable leave 'need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.' Once an employee taking unforeseeable leave informs his employer that potentially FMLA-qualifying leave is needed, the regulations place on the employer the burden of ascertaining whether the employee's absence actually qualifies for FMLA protection." <u>Strickland v. Water Works & Sewer Bd. of City of Birmingham</u>, 239 F.3d 1199, 1209 (11th Cir. 2001)(quoting 29 C.F.R. § 825.303(b)).

According to Plaintiff, Coulter never requested that Plaintiff provide any medical documentation to verify that her illness was serious. In addition, Messmer never asked Plaintiff why she was absent so much, despite knowing that she had been in the hospital before he demoted her. Defendant's failure to act also contributes to the conclusion that its alleged violations of the FLMA are willful.

## C.   State Law Negligence Claim

In Count VII of the complaint, Plaintiff alleges that Defendant negligently supervised and retained Ames and Coulter.  Because Plaintiff has neither alleged that she was physically injured nor suffered any pecuniary loss as a result of her supervisors' harassment, Plaintiff may survive summary judgment only if she demonstrates that Defendant was willful or wanton in failing to remedy Plaintiff's hostile work environment.  H.J. Russell & Co. v. Jones, 250 Ga. App. 28, 31 (2001).  Under Georgia law, "[w]ilful and wanton conduct is conduct which shows 'that entire absence of care which would raise the presumption of conscious indifference, or that with reckless indifference, the person acted with actual or imputed knowledge that the inevitable or probable consequences of his conduct would be to inflict injury.'"  Id.

A comparison of the allegations in the instant case to the conduct which the Jones court deemed willful and wanton reveals that Defendant's motion must fail on this claim.  In Jones, the plaintiff sued her employer for negligent retention and supervision on the basis that her supervisor sexually harassed her by pulling on his pants to show the outline of his penis, grabbing her around her waist, using inappropriate language, and pressing his groin against her buttocks.  Id. at 29.  Like the instant case, the plaintiff in Jones reported

31

her supervisor's behavior to his superiors, who in turn, transferred the harassing supervisor. Id.

The allegations of the present case, however, are more egregious than those found in Jones. Unlike in Jones, Plaintiff suffered from supervisor sexual harassment that culminated in her transfer and demotion. Furthermore, after Plaintiff complained to Messmer about Ames's conduct, she was told to "grow a backbone" while the employer in Jones took immediate action to investigate and remove the harasser from Plaintiff's presence. This comparison between Jones and the present case supports the conclusion that Plaintiff has successfully shown that Defendant's conduct was willful or wanton. Accordingly, Defendant's motion for summary judgment on this claim fails.[18]

## IV.  Conclusion

Upon the foregoing, Defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff may

---

[18] While Plaintiff survives summary judgment on this claim, the Court shares the view of his esteemed colleague that "as plaintiff has a viable federal claim that will proceed to the jury, this Court is uncertain why she would want to muddle the trial with a state claim whose parameters have been historically so unclear and whose elements clearly set out a more onerous burden for plaintiff to meet than does the federal claim. Proceeding with such a claim could well pose more problems for plaintiff down the road, because, should she prevail on both the state and federal claims, but have the former claims reversed on appeal, it would be difficult to try to unravel the damages calculated by the jury on two similar claims arising out of the same core facts, one of which claims would have subsequently been dismissed." McDaniel v. Fulton County Sch. Dist., 233 F.Supp.2d 1364, 1389 n.9 (N.D. Ga. 2002)(Carnes, J.).

proceed to trial on all of her claims except for her failure to promote claim pertaining to the Washington Road store.

    **ORDER ENTERED** at Augusta, Georgia, this _____ day of October 2005.

_____
UNITED STATES DISTRICT JUDGE

# United States District Court
## *Southern District of Georgia*

ATTORNEYS SERVED:

E. BRIAN WATKINS
KAREN L. TRAFFORD
JAN PIETRUSZKA
ROBIN L. HENDERSON
MARY LI CREASY
E. PERRY SENTELL, III
LAURAL PAYNE LANDON

CASE NO:        CV 104-047

DATE SERVED:  10/21/05

SERVED BY:     J.A. HOWELL, III

☐ Copy placed in Minutes
☑ Copy given to Judge
☐ Copy given to Magistrate